IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD MICHAEL ENGSTRAND,

                    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

OPINION AND ORDER

13-cv-436-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Ronald Michael Engstrand is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his claim for Disability Insurance Benefits and Supplemental Security Income payments under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge hearing plaintiff's claim concluded that although he was diabetic and had mild osteoarthritis, he retained the ability to perform substantial gainful activity. Her conclusion became the final decision of defendant when plaintiff's request for review was denied by the Appeals Council.

      Plaintiff contends that the administrative law judge erred in two respects: (1) she failed to give proper weight and consideration to the opinion of plaintiff's treating physician in violation of the "treating physician" rule; and (2) she made an improper credibility determination. Neither contention is supported by the record. Accordingly, the commissioner's denial of plaintiff's claim will be affirmed.

1

RECORD FACTS

Plaintiff Ronald Engstrand was born in 1963 and has a high school education. He worked as a dairy farmer, first on his own land and later on a rented farm or for his parents on their farm. He is married and the father of six children. He applied for disability benefits and supplemental security income payments beginning July 1, 2007, alleging that he suffered from severe, disabling diabetes with neuropathy in his legs and arthritic pain in his knee, hip and ankle joints.

A. Medical Evidence

1. Thomas Retzinger, M.D.

Plaintiff saw Dr. Thomas Retzinger, a family practice doctor, eight times between May 2009 and January 2011. At a "new patient visit" in May 2009, Retzinger found that plaintiff was diabetic and hypertensive, but did not identify any other physical problems that would prevent plaintiff from working. AR 235-56. Plaintiff returned a month later for a diabetes check; Retzinger noted that plaintiff was not checking his blood sugars and that his hemoglobin count was abnormally high but he had good sensation in his feet. AR 226. In March 2010, Retzinger found that plaintiff's blood sugars were out of control, his oral medications were ineffective in managing his problem and he was not checking his blood sugars. AR 227. Plaintiff was started on NovoLog mix (an insulin injection, http://www.novologmix70-30.com/default.aspx?RequestId=459b70be, visited May 30, 2014) to take before each meal and Retzinger encouraged him to record his blood sugars before meals

2

and to meet with clinic personnel for diabetic education and dietary management.  Id.

Three months later, in June 2010, Retzinger checked plaintiff's diabetes and what plaintiff reported as significant pain in his feet as well as in his right hip and knee.  AR 229, 255.  The doctor noted normal range of motion in plaintiff's hip, but some right knee tenderness.  He prescribed Lortab (acetaminophen and hydrocodone, http://www.drugs.com/lortab.html, visited May 30, 2014) for pain management, arranged for an xray of plaintiff's right hip and right knee and encouraged plaintiff to keep a blood sugar log.  Id.  At an evaluation of plaintiff's knee and hip pain at the end of June, xrays showed evidence of degenerative arthritis and the doctor noted that his blood sugars were still high.  AR 231.  An examination of plaintiff's feet revealed diminished sensation in both, with some burning dysesthesias (impairment of sensation), leading Retzinger to conclude that the best course of action was for plaintiff to gain better control of his diabetes.  He noted that plaintiff had not filled two prescriptions.

On July 21, 2010, Retzinger saw plaintiff for follow up on the neuropathy in his feet and increased his insulin mix.  AR 259.  On the same day, Retzinger completed a Medical Source Statement for the Social Security Administration in which he wrote that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand or walk at least two hours in an eight-hour workday, would have to alternate periodically between sitting and standing to relieve pain and avoid temperature extremes, vibration, humidity and hazards.  AR 218-21.  In addition, plaintiff could do occasional climbing, crouching, bending, crawling and stooping and would be limited in pulling or pushing with his lower extremities.  AR 219.  Retzinger

3

attributed plaintiff's physical limitations to peripheral neuropathy secondary to Type 2 diabetes mellitus and to degenerative joint disease, id., but did not explain why he thought plaintiff would be limited to two hours of standing or walking in any eight-hour day.

On August 25, 2010, Retzinger found that plaintiff had significant peripheral neuropathy, as well as high blood sugars, although he was still able to perceive a 10-gram filament without difficulty. AR 261. (10-gram monofilaments will buckle when a 10-gram force is applied. "[L]oss of the ability to detect this pressure at one or more anatomic sites on the plantar surface of the foot has been associated with loss of large-fibre nerve function." http://care.diabetesjournals.org/contents/31/8/1679.long, visited May 30, 2014).

Five months later, on January 12, 2011, Retzinger observed that plaintiff seemed to be doing quite well., noting that "[h]e feels fine." AR 263. At the time, plaintiff was taking Novolin (injectable insulin) and checking his blood sugars three times a day; his extremities revealed good sensation and circulation; and he was able to detect a 10-gram filament in both feet without difficulty. Id. He was not taking any Zocor (cholesterol lowering drug (www.medicinenet.com/simvastain/article.htm, visited May 30, 2014), hydrochlorothlazide or lisinopril, both of which are used to treat hypertension (http://www.nlm.nih.gov/medlineplus/druginfo/med/a692051.html, and http://vsearch.nlm.nih.gov/vivisimo/cgi-bin/query-meta?v%Aproject–hydrochlorothiazide, visited May 30, 2014), and he had not had the lab work done that Retzinger had recommended. The doctor noted that plaintiff "continues to work," although he did not say what kind of work he was doing. Id.

2. Agency physicians

Dr. Janis Byrd, M.D., reviewed plaintiff's medical records on September 28, 2010 and concluded that plaintiff could lift 25 pounds frequently, 50 pounds occasionally, stand or walk at least two hours in an eight-hour workday, and would have to alternate periodically between sitting and standing to relieve pain.  AR 245.  She found that he would have occasional limitations of climbing, balancing, stooping, kneeling, crouching and crawling,  AR 246, and that he should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity and vibration.  AR 248.  In her opinion, plaintiff's statements about his symptoms were "not inconsistent" with the objective evidence in the record, with the descriptions of plaintiff's activities of daily living or with Dr. Retzinger's reports and that plaintiff was precluded from returning to his past work in farming and limited to nearly sedentary activities.  AR 249.

Five months later, on February 16, 2011, Dr. Syd Foster, D.O., reviewed plaintiff's medical records.  He agreed with Byrd that plaintiff could lift 25 pounds frequently, but differed from her in believing that plaintiff could stand or walk with normal breaks for six hours in an eight-hour work day and sit for the same length of time.   AR 266.  He agreed that plaintiff was limited in crouching and kneeling, AR 267, and should avoid concentrated exposure to extreme cold or heat and humidity.  AR 269.  He noted that although plaintiff complained of burning pain in his legs and feet, he retained the ability to detect a 10 gram filament in his feet and had a normal gait and recent examinations had shown no increase in his neuropathy.  AR 270.  Foster noted also that plaintiff did not take his medications as directed and had not been compliant with his diet.

5

Plaintiff reported that he was limited to one to two hours a day of standing and walking, but Foster found this inconsistent with plaintiff's report that he worked five hours a day at his parents' farm. He found it unnecessary to give controlling weight to Dr. Retzinger's July 2010 report because plaintiff's blood sugar levels and his neuropathy had improved since the report was written and he found plaintiff's statements about his functional abilities to be less than credible. Plaintiff had told his cardiologist in May 2010 that he was working five hours a day at his parents' farm but in his activities of daily living report, he had said he could stand and walk no more than one to two hours a day. AR 270. In Foster's opinion, plaintiff was capable of medium work with no constant kneeling or crouching and limited exposure to heat, cold or humidity.

3. Plaintiff's function reports

In an August 20, 2010 function report filed with the Social Security Administration, plaintiff described his activities of daily living. He drove his wife to work (5-6 a.m.), returned home to put the dogs outside (6-7 a.m.), then took his children to his parents' farm to "take care" of their 4H projects (cattle and horses)(8 a.m. to noon), returned home and prepared the noon dinner. After dinner, he picked up his wife at work (1-2 p.m.), made supper (5-6 p.m.), returned to his parents' farm to do whatever needed to be done with the 4H projects involving cattle (7-11 p.m.) and slept from 11 p.m. to 5 a.m. AR 158. He reported doing laundry and making meals "about 80% of the time," providing water and food to dogs, horses and cattle and giving them care as needed. AR 159. He added that his feet were very tender and that he

6

could not be on his legs too long before feeling a lot of pain. Id. He said that he did some cleaning and some limited home repairs, but had trouble doing extended house cleaning or lawn work. AR 160. He went outside to walk or drive on a daily basis and shopped for food weekly and also shopped for clothing. AR 161. He reported being able to pay bills, handle a savings account and use a checkbook. Id. He was no longer able to engage in sports with his kids but he attended their sporting events. AR 162. He had trouble lifting 100 pounds and found it hard to stay on his legs too long. AR 163.

In a report filed on January 20, 2011, plaintiff reported driving his wife to work at 5:30 a.m., coming home and lying down until 7, when he woke his kids and got them off to the bus by 7:38. AR 181. After that, he tidied the house, fed the dogs and left for his parents' farm where he spent two to three hours taking care of his children's 12 dairy cattle, providing feed and bedding. He drove home, ate something, then picked up his wife at 2:15, came home and helped with dinner. After supper, he took the children back to his parents' farm and helped them care for the dairy cows. Id. He reported he could no longer farm as he used to, that is, for 18 hours a day, that he had a lot of pain in his joints and that his feet were very tender. AR 182. He could be on his feet for a couple of hours at a time before he had to sit down. AR 183. As for shopping, he said he did it only a couple of times a month because it was hard for him to be on his feet for more than a couple of hours, but he went outside daily to walk. AR 184.

4. Administrative hearing

At the administrative hearing held on February 15, 2012, plaintiff testified that he had owned his own dairy farm until 1997, after which he worked until 2007 on a dairy farm he rented. AR 28-29. He also worked briefly with pre-cast concrete on a part-time basis but found the heat too extreme. AR 31. He said he helped his parents occasionally on their farm, about three times a week for an hour or so, doing tractor work or feeding the beef cows, but found it hard to be on his legs for more than a half-hour at a time, AR 35, so he usually had his children help out with the farm chores.

Also plaintiff testified that he drove his children to school, to athletic practices and to his parents' farm; AR 40-41, and did the weekly grocery shopping. AR 41. He testified that in the past he had done the laundry and cooked meals, but that his legs hurt too much for him to be on his feet more than a half-hour at a time. AR 42. He said he usually lay down for two hours a day, AR 43, to relieve his pain.

Vocational expert Stephen H. Porter testified at the hearing that he had reviewed the vocational exhibits in plaintiff's file and had heard his hearing testimony. He classified plaintiff's past work of dairy farming as heavy material handling. AR 58. In his opinion, a person of plaintiff's age, education and prior work experience with the capacity for medium exertion and limited to no more than frequent crouching or kneeling and having to avoid extreme heat, extreme cold and humidity would be unable to perform plaintiff's prior work but could work as a security guard surveillance system monitor, (1300 jobs in Wisconsin) ticket taker (1820 jobs in Wisconsin) and cashier (71,970 jobs in Wisconsin). AR 60-61. Porter

testified that his answer would not change if the hypothetical person were limited to light exertional work. Id. If, however, the person could not stand or walk for more than two hours in an eight-hour day, the available jobs would include only those of surveillance system monitor and ticket taker. AR 62. If the person were limited to only occasional stooping, kneeling, crouching, climbing and crawling, the only job would be the surveillance system monitor position. AR 63.

5. Administrative law judge's decision

The administrative law judge found that plaintiff had the severe impairments of diabetes mellitus with early neuropathy and mild osteoarthritis of the right hip and knee but concluded that neither of these impairments amounted to an impairment meeting or medically equaling the severity of any listed impairment. AR 14. She found plaintiff's hypertension "non-severe" because Dr. Retzinger had not noted any specific limits for it or any active treatment and he had taken plaintiff off medication for the condition. AR 13. She did not give controlling weight to Retzinger's opinion that plaintiff could stand or walk for no more than two hours out of an eight-hour day because she found the opinion inconsistent with plaintiff's xray results, which had showed only mild osteoarthritis of his knee and hip, AR 15, with the lack of any objective finding of loss of sensation, "as documented by the 10 gram filament test result," AR 16, and with the lack of any positive EMG or nerve conduction study documenting a neuropathy. In addition, she noted plaintiff's generally normal neurological tests and normal range of motion, the absence of joint tenderness, swelling or edema in the lower extremities and

9

his normal gait. AR 15.

The administrative law judge observed that plaintiff had brought his blood glucose and overall condition under control as his dosage of insulin had increased and that the doctors who had limited plaintiff to two hours of walking or standing had based their limitations on his peripheral neuropathy-related problems, even though plaintiff was only partially compliant with treatment. Moreover, plaintiff had no reported hypoglycemic episodes, was not refilling any pain medication prescriptions related to his diabetic condition and was refilling only the pain medications related to his mild osteoarthrititis of his hip and knee. Id. She noted that Retzinger had imposed only one limitation on plaintiff relating to his osteoarthritis and that was "no vibration." Id. (citing AR 221). In her opinion, Retzinger's restriction of plaintiff to no more than two hours a day of walking was inconsistent with the doctor's own treating notes and with the medical evidence in the record. Thus, she gave his assessment less weight than she gave to Dr. Foster's assessment that plaintiff was not limited to two hours a day of walking or standing. AR 16. She bolstered this conclusion with a summary of the activities that plaintiff had reported in his function reports to the Social Security Administration, which indicated far more physical work and effort than Retzinger had found him capable of performing when he assessed him. Id.

In the end, the administrative law judge concluded that plaintiff could not return to his past relevant work but that he had the residual functional capacity to perform medium work except for the inability to kneel or crouch more than frequently and the inability to work in environments with concentrated exposure to extreme, heat, cold and humidity. She found

plaintiff capable of performing three jobs that all fell into the category of light and unskilled work: surveillance monitor, ticket taker and cashier.

OPINION

The only two questions in this case are whether the administrative law judge erred when she rejected the opinion of plaintiff's treating physician and when she found plaintiff not credible in his descriptions of his disability and his alleged inability to work. Plaintiff focuses primarily on the first question, arguing that the administrative law judge was required under 20 C.F.R. § 404.1527(c)(2) to give controlling weight to Dr. Retzinger's assessment of plaintiff's ability to function. Section 404.1527(c)(2) directs administrative law judges to give controlling weight to the opinion of the treating physician so long as his opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." See also Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) (administrative law judge can reject examining physician's opinion only for reasons supported by substantial evidence in record; contradictory opinion of non-examining physician does not suffice).

In this case, a wealth of evidence in the record support the administrative law judge's decision to give less weight to Retzinger's assessment of plaintiff's ability than she gave to the assessment by Dr. Foster, an agency physician. When Retzinger limited plaintiff to standing or walking for no more than two hours a day, he gave no explanation for his opinion and the restriction is unsupported by his own treatment notes, as well by any positive EMG or nerve

11

conduction study. It is also inconsistent with plaintiff's xray results and the 10-gram filament test. (Plaintiff attacks the administrative law judge's rejection of this opinion, saying that as a lay person, she had no basis on which to find that the ability to perceive a 10-gram filament meant that plaintiff's neuropathy would not restrict him from walking and standing. This is true, but it was permissible to her to rely on the evidence in the record that both Retzinger and Foster, viewed the test as indicating that plaintiff had not lost sensation in his feet.) In addition, plaintiff had generally normal neurological tests; no evidence of any significant muscular hypertrophy, atrophy, twitching or spasms; normal range of motion; lack of joint tenderness, swelling or edema in the lower extremities; and a normal gait. She noted plaintiff's non-compliance with Retzinger's advice for treating his diabetes and hypertension, the absence of any blood pressure tests and his failure to fill his prescriptions and take his prescribed medications or have prescribed laboratory work done and she gave weight to Dr. Retzinger's January 2011 report that plaintiff had gotten his blood glucose and overall condition under control and was not taking any pain medication related to his diabetic condition. Finally, the administrative law judge took into account plaintiff's August 20, 2010 function report, in which plaintiff described a daily routine of considerable responsibility and hard work demonstrating that he could manage jobs requiring a medium level of exertion that involved standing for six out of eight hours a day.

      Despite this evidence, plaintiff contends it was improper for the administrative law judge to conclude that plaintiff had no underlying physical impairment supported "by medically acceptable clinical and diagnostic laboratory techniques that could reasonably be expected to

produce his pain or other symptoms," AR 14-15, citing Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings") and saying that she was "playing doctor." Plaintiff fails to acknowledge that the administrative law judge did not make her own independent medical findings, but relied on other medical evidence in the record (or the lack of such evidence), including Dr. Retzinger's reports of the improvement in plaintiff's condition as of January 2011, the absence of any indications in any of the doctor's reports of disabling conditions and plaintiff's function reports, showing extensive physical exertion. I conclude that the administrative law judge did not step beyond the bounds of her authority in adopting the agency physician's opinion that plaintiff retained the capacity to perform work of medium exertion with certain limitations on kneeling and crouching. It was reasonable for her to give lesser weight to the opinion of plaintiff's treating physician and to rely on Dr. Foster's February 16, 2011 assessment that plaintiff could handle six hours of standing or walking in an eight-hour day. She found it more persuasive than the reports of the other two doctors (treating physician Retzinger and agency physician Byrd) because it was undertaken after Retzinger had observed the improvement in plaintiff's condition as he gained control over his diabetes. Foster was the only doctor to evaluate plaintiff who had access to this new information, which made it reasonable for the administrative law judge to place greater weight on his assessment of plaintiff's capacity for work.

It was also reasonable for the administrative law judge to question the credibility of plaintiff's complaints of pain. The general rule is that "[a]n administrative law judge may not

discount a claimant's credibility just because [claimant's] claims of pain are unsupported by significant physical and diagnostic examination results." Pierce v.Colvin, 739 F.3d 1046, 1049-50 (7th Cir. 2014); SSR 96-7p(4). The court of appeals recognizes that pain can exist unsupported by significant physical and diagnostic examination, but in such cases the "the claimant's credibility becomes pivotal." Id. at 1050. In this case, the administrative law judge had good reasons for questioning plaintiff's credibility. She noted the lack of medication prescribed for his pain other than anti-inflammatory medication for his mild osteoarthritis, as well as what she characterized as his "fairly impressive array of active daily activities," including his many hours of work on his parents' farm, helping children with their 4H projects and his parents with other chores. AR 16. Given the wide gap between the disability plaintiff claimed and the activities he reported doing, the administrative law judge did not err in finding him not entirely credible.

ORDER

IT IS ORDERED that plaintiff Ronald Michael Engstrand's motion for summary judgment, dkt. #10, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter

judgment for defendant and close this case.

Entered this 2d day of June, 2014.

                                                BY THE COURT:
                                                /s/
                                                BARBARA B. CRABB
                                                District Judge